IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Bryan M. Gantt,  #197653, ) | |
| ) | Civil Action No. 3:06-1398-CMC-JRM |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| A. J. Padula, Warden; Henry McMaster, ) | |
| Attorney General of the State of South ) | **REPORT AND RECOMMENDATION** |
| Carolina, ) | |
| ) | |
| Respondents. ) | |
| ) | |

Petitioner, Bryan M. Gantt ("Gantt"), is an inmate at the South Carolina Department of Corrections serving a sentence of 30 years imprisonment (kidnapping), 30 years consecutive (armed robbery), 30 years consecutive (first degree criminal sexual conduct), 10 years concurrent (possession of crack cocaine), 5 years consecutive for grand larceny, and 1 year consecutive (resisting arrest).  He filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on May 3, 2006.[1]  The case was automatically referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 (B)(2)(c), DSC.  Respondents filed a motion for summary judgment, supported by copies of portions of the state court record, on June 20, 2006.  Because petitioner is proceeding pro se, an order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued on July 6, 2006, advising petitioner of his responsibility to properly respond to the motion for summary judgment.  Petitioner filed his response on August 4, 2006.

---

[1] This is the <u>Houston v. Lack</u>, 487 U.S. 266 (1988) "delivery" date.  See order filed May 11, 2006.

## Procedural History

The South Carolina Supreme Court reversed the order of the Richland County Court of Common Pleas granting Gantt's application for post-conviction relief in <u>Gantt v. State</u>, 354 S.C 183, 580 S.E.2d 133 (2003). In that opinion, the Supreme Court gave the following factual and procedural summary:

> Respondent Gantt was convicted and sentenced for first degree criminal sexual conduct, kidnapping, armed robbery, grand larceny of a vehicle, possession of crack cocaine, and resisting arrest. These convictions all stemmed from a single incident.
>
> The thirty-one-year-old victim (Victim) testified she was cleaning her car at a car wash when respondent approached her from behind, put a gun to her back, and demanded her money and jewelry. After she complied, he threatened to kill her if she screamed and told her to get in the car. They drove to a wooded area where respondent raped Victim in the front seat of the car and threw the used condom out the car window.
>
> Respondent then had Victim drive to a bank to withdraw money for him. When Victim asked a teller for help, respondent drove off in Victim's car leaving her at the bank. Victim took police to the scene of the rape where an officer recovered the used condom. The DNA profile recovered from the semen in the condom matched respondent's.
>
> Respondent was arrested the same day. He was in Victim's car, a gun was in the car, [FN1] and he had a piece of crack cocaine in his pocket. He fought with the arresting officers.
>
> FN1. The gun was a B.B. gun. The victim testified she knew nothing about guns.
>
> At trial, respondent testified that he met Victim at a crack house and she agreed to have sex with him in exchange for crack. They had consensual sex in her car then drove to the bank so she could withdraw money to buy more crack. Victim was acting paranoid from the drugs so respondent followed her into the bank. When she was belligerent to him, he left in her car.
>
> Shortly after respondent's arrest, Officer Davis went to the jail with a search warrant to obtain blood, saliva, and hair from respondent. Officer Davis testified that respondent refused to cooperate at that time. The samples were subsequently taken pursuant to court order. Respondent testified he initially

> refused to cooperate because he wanted his lawyer present. Evidence corroborated that respondent willingly gave the requested samples when presented with the proper order.
>
> On appeal, respondent claimed the trial judge erred in allowing evidence of his refusal to cooperate because the search warrant was invalid under S.C. ode Ann. § 17-13-140 (2002). In an unpublished opinion, the Court of Appeals declined to address the issue because there was no objection to the validity of the search warrant.
>
> Respondent subsequently brought this PCR action claiming counsel was ineffective for failing to object to the search warrant's validity. [FN2] The PCR judge found counsel was ineffective and respondent was prejudiced because the State used the evidence of respondent's non-compliance as evidence of his guilt.
>
> FN2. At the hearing, counsel agreed he was ineffective for failing to preserve this issue but he believed the outcome of the trial would not have been different. Counsel's admission is unlike the testimony of counsel in Martinez v. State, 304 S.C. 39, 403 S.E.2d 113 (1991), where trial counsel admitted the testimony of a potential witness could have made a difference.

The Supreme Court held that trial counsel committed error in failing to challenge the validity of the search warrant which would have allowed him to object to the evidence of Gantt's refusal to comply. However, the Court further held that Gantt failed to show prejudice. Justice Pleicones dissented. Gantt's petition for a rehearing was denied and the Remittitur was returned on June 11, 2003.

Instead of filing a habeas petition in this Court, Gantt filed a second PCR on June 17, 2004. He essentially alleged that his trial appellate and PCR attorneys were ineffective for failing to preserve and raise all possible issues. The PCR court issued a Conditional Order of Dismissal on December 13, 2004, finding that the application was successive and untimely under South Carolina law. Gantt made no response and a Final Order was filed on December 23, 2005. Gantt filed a Notice of Intent to Appeal on January 19, 2006. The South Carolina Supreme Court dismissed the

appeal on February 15, 2006 pursuant to Rule 227(c), SCACR.[2] The Remittitur was returned on March 3, 2006.

## Grounds for Relief

In his present petition, Gantt asserts that he is entitled to a writ of habeas corpus on the following grounds:

    1.    Ineffective assistance of appellate counsel and appellate court proceedings;

    2.    Ineffective assistance of trial counsel; and

    3.    Any and all other grounds raised pro se below not specifically mentioned in this application.

Ground 2 presents the issue ruled on by the PCR court and the South Carolina Supreme Court. Grounds 1 and 3 appear to be an attempt to excuse procedural bar and equitably toll the statute of limitations.

## Discussion

A.    Statute of Limitations

Respondents assert that the petition should be dismissed because it was not timely filed under the one-year statute of limitations created by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA became effective on April 24, 1996. The AEDPA

---

[2]That Rule states:
    If the lower court has determined that the post-conviction relief action is barred as successive or being untimely under the statute of limitations, the petitioner must, at the time the notice of appeals is filed, provide an explanation as to why this determination was improper. This explanation must contain sufficient facts, argument and citation to legal authority to show that there is an arguable basis for asserting that the determination by the lower court was improper. If the petitioner fails to make a sufficient showing, the notice of appeal may be dismissed.

substantially modified procedures for consideration of habeas corpus petitions of state inmates in the federal courts. One of those changes was the amendment of 28 U.S.C. § 2244 to establish a one-year statute of limitations for filing habeas petitions. Subsection (d) of the statute now reads:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>  (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year statute of limitations begins to run on the date the petitioner's conviction becomes final, not at the end of collateral review. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). In South Carolina, a defendant must file a notice of appeal within 10 days of his conviction. Rule 203(b)(2), SCACR. Thus if a defendant does not file a direct appeal, his conviction becomes final ten days after the adjudication of guilt. Crawley v. Catoe, 257 F.3d 395 (4th Cir. 2001). If a defendant files a direct appeal and his conviction is affirmed, the conviction becomes final 90 days after the final ruling of the South Carolina Supreme Court. Harris, 209 F.3d at 328, n. 1 (conviction become final on the expiration of the 90-day period to seek review by the United States Supreme Court).

The statute of limitations is tolled during the period that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). The statute of limitations is tolled for the entire period of the state post-conviction process, "from initial filing to final disposition by the highest state court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)." Taylor v. Lee, 196 F.3d 557, 561 (4th Cir. 1999). Following the denial of relief in the state courts in state habeas proceedings, neither the time for filing a petition for certiorari in the United States Supreme Court, nor the time a petition for certiorari is considered by the United States Supreme Court, is tolled." Crawley v. Catoe, 258 F.3d at 399. A state collateral proceeding must be "properly filed" for the statutory tolling provisions of 28 U.S.C. § 2244(d)(2) to apply. "When a post-conviction petition is untimely under state law, 'that [is] the end fo the matter' for purposes of § 2244(d)(2)." Pace v. DiGulielmo, 544 U.S. 408, 414 (2005) quoting Carey v. Saffold, 536 U.S. 214, 236 (2002).

Generally, computing periods of time under 28 U.S.C. § 2244(d)(2) is pursuant to Fed. R. Civ. P. 6(a). Hernandez v. Caldwell, 225 F.3d 435, 439 (4th Cir. 2000).

The Fourth Circuit has held that the statute of limitations in § 2254 is not jurisdictional, but subject to the doctrine of equitable tolling. Equitable tolling applies only in "those race instances where–due to circumstances external to the [petitioner's] own conduct–it would be unconscionable to enforce the limitation against the [petitioner]." Harris, 209 F.3d at 330. Under § 2244(d), the State bears the burden of asserting the statute of limitations. Petitioner then bears the burden of establishing the doctrine does not apply. Hill v. Braxton, 277 F.3d 701 (4th Cir. 2002). To benefit from the doctrine of equitable tolling, a petitioner must show: (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time. Rouse

6

v. Lee, 339 F.3d 238 (4th Cir. 2003), cert. denied, 541 U.S. 905 (2004). It is clear that a pro se prisoner's ignorance of the law is not a basis to invoke equitable tolling. United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Likewise, an attorney's mistake in calculating the filing date of the AEDPA's statute of limitations is not an extraordinary circumstance warranting equitable tolling. Harris, 209 F.3d at 331.

The South Carolina Court of Appeals affirmed Gantt's conviction on May 18, 1998 (App. 827). His conviction became final on August 17, 1998 when he did not seek review of the United States Supreme Court. Gantt's first PCR was filed on May 18, 1999 (App. 711). At that time, 274 days of untolled time had lapsed. The statute of limitations was tolled until June 11, 2003, when the petition for rehearing was denied by the South Carolina Supreme Court. Gantt's second PCR did not toll the statute of limitations as the South Carolina courts found it to be untimely. Pace v. DiGulielmo, supra. However, even if the second PCR was "properly filed" it was not filed until June 17, 2004, almost a full year after the first PCR was finally rejected by the South Carolina Supreme Court. This period, coupled with the 274 days from the date his conviction became final and the filing of the first PCR, clearly shows that the present petition is untimely.[3]

Gantt appears to recognize that his petition is untimely and cites the standard for equitable tolling discussed above. (Roseboro Response, p, 1). He makes a novel argument on this issue. Gantt asserts that the extraordinary circumstance, beyond his control, that prevented him from filing his habeas petition in this court is the unfairness of the South Carolina appellate process which he asserts "is designed to have poor and indigent petitioners to fail and abandon constitutional issues." (Roseboro Response, p. 1). Central to this argument is Gantt's contention that the South Carolina

---

[3]The present petition was not filed until May 3, 2006.

"appellate courts never once instructed the petitioner to file a federal habeas corpus petition within (1) year of the final judgment that was rendered by th South Carolina Supreme Court." (Id., p. 2).[4] this argument is frivolous. Courts rule on issues presented to them by the litigants. It is not their function to provide legal advice to those parties.

    B.    Procedural Bar

Respondents assert that Grounds 1 and 3 in the present petition have never been presented to the South Carolina Supreme Court and are, therefore, procedurally barred.

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

    **1.**    **Exhaustion**

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A)  the applicant has exhausted the remedies available in the courts of the State; or

---

[4]This argument also appears to be the basis for Grounds 1 and 3 in his petition. Gantt asserts that he was prevented from filing his petition "because of ineffectiveness of appellate lawyer and appellate court, in that I never were (sic) informed of any inadvertence (mistake) throughout my entire pro se filings in this matter." Any claim that his PCR counsel and/or PCR appellate counsel were ineffective is barred by 28 U.S.C. § 2254(I) and does not excuse default.

>      (B)(i)  there is either an absence of available State corrective process; or
>
>      (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2)  An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3)  A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. See O'Sullivan v. Boerckel, 526 U.S. 838 ( 1999).

The United States Supreme Court has consistently enforced the exhaustion requirement.

> The exhaustion doctrine existed long before its codification by Congress in 1948.  In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act....

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. See SCACR 207(b)(1)(B) and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976).  The second avenue is by filing an application for post-conviction relief ("PCR").  See S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of

his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.[5] If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). If petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. See Rose v. Lundy, supra.

### 2.     Procedural bypass[6]

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the

---

[5]In cases where the South Carolina Supreme Court applied a procedural bar, however, this court is directed to also apply that bar, except in certain limited circumstances. See discussion below on procedural bypass.

[6]This concept is sometimes referred to as procedural bar or procedural default. If a petitioner procedurally bypasses his state remedies, he is procedurally barred from raising them in this court.

state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both 'cause' for noncompliance with the state rule and 'actual prejudice resulting from the alleged constitutional violation.'

Smith v. Murray, supra, quoting Wainwright v. Sykes, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3.     Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner in this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts, and this court is barred from considering the claim (absent a showing of "cause" and "actual prejudice"). In such an instance, the exhaustion requirement is "technically met" and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert. denied, 522 U.S. 833 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-98 (1989); and George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996).

### 4.     Excusing Default

The requirement of exhaustion is not jurisdictional, and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances**.** Granberry v. Greer, 481 U.S. 129, 131 (1989). First, a petitioner may obtain review of a procedurally barred claim by establishing cause for the default and actual prejudice from the failure to review the claim. Coleman v. Thompson, 501 U.S. at 750 and Gary v. Netherland, 518 U.S. 152, 162 (1996). Second, a petitioner may rely on the doctrine of actual innocense.

A petitioner must show both cause and actual prejudice to obtain relief from a defaulted claim. In this context, "cause" is defined as "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Strickler v. Greene, 527 U.S. 263, 283 n. 24 (1999) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986). A petitioner may establish cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, demonstrate the novelty of his claim, or show interference by state officials. Murray v. Carrier; Clozza v. Murray, 913 F.3d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th

Cir.), cert. denied, 485 U.S. 1000 (1988). A petitioner must show reasonable diligence in pursuing his claim to establish cause. Hoke v. Netherland, 92 F.3d 1350, 1354 n. 1 (4th Cir. 1996). Further, the claim of cause must itself be exhausted. Edwards v. Carpenter, 529 U.S. 446 (2000) (failure of counsel to present issue on direct appeal must be exhausted in collateral proceeding as ineffective assistance to establish cause for default).

Generally, a petitioner must show some error to establish prejudice. Tucker v. Catoe, 221 F.3d 600, 615 (4th Cir.), cert. denied, 531 U.S. 1054 (2000). Additionally, a petitioner must show an actual and substantial disadvantage as a result of the error, not merely a possibility of harm to show prejudice. Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997).

"Actual innocense" is not an independent claim, but only a method of excusing default. O'Dell v. Netherland, 95 F.3d 1214, 1246 (4th Cir. 1996), *aff'd*, 521 U.S. 151 (1997). To prevail under this theory, a petitioner must produce new evidence not available at trial to establish his factual innocense. Royal v. Taylor, 188 F.3d 239 (4th Cir. 1999). A petitioner may establish actual innocense as to his guilt, Id., or his sentence. Matthews v. Evatt, 105 F.3d 907, 916 (4th Cir. 1997).

### 5.    Procedure

Procedural default is an affirmative defense which is waived if not raised by respondents. Gray v. Netherland, 518 U.S. at 165-66. It is petitioner's burden to raise cause and prejudice or actual innocence. If not raised by petitioner, the court need not consider the defaulted claim. Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

The undersigned concludes that Grounds 1 and 3 are procedurally barred. The only issue presented on direct appeal was "whether the trial court erred in allowing the state to present testimony on appellant's refusal to provide blood, hair, and salvia samples when appellant had the right to refuse to give such samples?" The conviction was affirmed. State v. Gantt, 98-UP-250

13

(S.C. Ct. App., filed May 18, 1998). As discussed above, this issue was revived as a claim of ineffective assistance of counsel and ultimately rejected by the South Carolina Supreme Court. Gantt's arguments discussed above concerning alleged deficiencies in the South Carolina process do not establish cause and prejudice.

      C.      Ineffective Assistance of Trial Counsel

In Ground 2 of the present petition, Gantt asserts that his trial counsel was ineffective. This is the issue upon which the PCR court granted Gantt's application, and which ruling was reversed by the South Carolina Supreme Court.

Since Gantt filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999). That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable

14

> from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the <u>wide</u> <u>range</u> of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

The undersigned agrees with the analysis of the South Carolina Supreme Court that Gantt failed to show prejudice. The court noted that there "was only a single reference and was not tied to respondent's guilt." Gantt v. State, 580 S.E.2d at 136. Gantt has not shown that the decision of the South Carolina Supreme Court was "contrary to, or involved an unreasonable application of" Strickland.

## Conclusion

Based on a review of the record, the undersigned recommends that respondents' motion for summary judgment be granted, and the petition dismissed without an evidentiary hearing.

          Respectfully submitted,

          s/Joseph R. McCrorey
          United States Magistrate Judge

January 26, 2007
Columbia, South Carolina


  **The parties' attention is directed to the important information on the attached notice.**

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).